# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT GERALD PLUMMER,

       Petitioner,

  v.

ANDREW JACKSON,

       Respondent.

_____/

CASE NO. 2:06-CV-15189
JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PAUL J. KOMIVES

---

## REPORT AND RECOMMENDATION ON (1) PETITIONER'S HABEAS APPLICATION (docket #1); and (2) PETITIONER'S MOTION FOR DISCOVERY, EVIDENTIARY HEARING, AND TO EXPAND THE RECORD (docket #11)

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     E.    *Claims Relating to Newly Discovered Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Actual Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    *Denial of Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        3.    *Perjured Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     F.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           a. Laboratory Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           b. Promise that Petitioner Would Testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
           c. Inconsistent Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
           d. Appellate Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     G.    *Petitioner's Motion for Evidentiary Hearing and Discovery* . . . . . . . . . . . . . . . . . . . . . . . 21
        1.    *Standards for Granting an Evidentiary Hearing and Discovery* . . . . . . . . . . . . . . . . . 21
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
           a. Ineffective Assistance of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
           b. Suppression of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
           c. Denial of Motion for New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
           d. Suggestive Line-up . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           e. Due Process on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
           f. Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
     H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.  The Court should also deny petitioner's motion for discovery, an evidentiary hearing, and expansion of the record (docket #11).

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Robert Gerald Plummer is a state prisoner, currently confined at the Mound Correctional Facility in Detroit, Michigan.

2.     On April 16, 1996, petitioner was convicted of first-degree premeditated murder, MICH. COMP. LAWS § 750.316; assault with intent to commit murder, MICH. COMP. LAWS § 750.83; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Berrien County Circuit Court.  He was subsequently sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, a term of 30-90 years' imprisonment on the assault conviction, and a mandatory consecutive term of two years imprisonment on the felony firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims: (1) insufficient evidence of premeditated murder; (2) verdict against the weight of the evidence; and (3) ineffective assistance of counsel.  The Michigan Court of Appeals agreed that the evidence was insufficient to prove the premeditation element of first degree murder, and remanded for the entry of a judgment of second degree murder and resentencing.  The court of appeals rejected petitioner's remaining claims.  *See People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753 (1998).

4.     The prosecutor sought leave to appeal this decision to the Michigan Supreme Court,

and petitioner sought leave to appeal on the issues which had been rejected by the court of appeals. Both applications for leave to appeal were denied in standard orders. *See People v. Plummer*, 457 Mich. 864, 581 N.W.2d 730 (1998); *People v. Plummer*, 459 Mich. 900, 590 N.W.2d 58 (1998)

5.    On December 3, 1999, the trial court entered judgment of second degree murder and sentenced petitioner to a term of 20-80 years' imprisonment on that conviction.

6.    Petitioner appealed as of right, raising two challenges to the newly imposed sentence: (1) improper scoring of the guidelines; and (2) disproportionality. The Michigan Court of Appeals rejected petitioner's claims, and affirmed his sentence. *See People v. Plummer*, No. 224719, 2001 WL 1012109 (Mich. Ct. App. Sept. 4, 2001) (memorandum).

7.    Petitioner sought leave to appeal these issues in the Michigan Supreme Court. The Supreme Court denied leave to appeal in a standard order. *People v. Plummer*, 465 Mich. 968, 641 N.W.2d 861 (2002).

8.    Petitioner filed an application for the writ of habeas corpus in this Court on October 10, 2002. On December 9, 2002, the Court dismissed the petition without prejudice for failure to exhaust state court remedies.

9.    On April 3, 2003, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims of ineffective assistance of counsel and newly discovered evidence. On September 14, 2004, the trial court denied petitioner's motion for relief from judgment based on petitioner's failure to establish good cause for his failure to raise the claims on appeal. *See People v. Plummer*, No. 95-003195-FC-G (Berrien County, Mich., Cir. Ct. Sept. 14, 2004). Petitioner thereafter filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, raising the following claims:

I. PETITIONER'S CLAIMS ADEQUATELY SET FORTH GROUNDS ON CAUSE AND PREJUDICE FOR FAILING TO RAISE THE CLAIMS ON DIRECT APPEAL, AND THE POST CONVICTION DENIAL OF RELIEF WAS CONTRARY TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.

II. PETITIONER WAS DENIED DUE PROCESS AND A FAIR TRIAL WHERE HIS ATTORNEY WAS INEFFECTIVE FOR FAILING TO BRING THE INCONSISTENCIES AND ERRORS IN THE LABORATORY REPORTS TO THE ATTENTION OF THE JURY.

III. PETITIONER WAS DENIED DUE PROCESS AND A FAIR ADJUDICATION ON HIS POST CONVICTION MOTION WHERE THE NEWLY DISCOVERED EVIDENCE WARRANTED A NEW TRIAL.

IV. THE NEWLY DISCOVERED EVIDENCE WHICH ESTABLISHED ACTUAL INNOCENCE, MAKES ANY CONTINUED CONFINEMENT AFTER REVIEWING THE NEW EVIDENCE TO BECOME "CRUEL AND UNUSUAL PUNISHMENT" PROHIBITED BY THE EIGHTH AMENDMENT.

Both courts denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Plummer*, 477 Mich. 866, 721 N.W.2d 185 (2006); *People v. Plummer*, No. 264876 (Mich. Ct. App. Mar. 9, 2006).

10. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on November 21, 2006. As grounds for the writ of habeas corpus, he raises the claims that he raised in his state court motion for relief from judgment.

11. Respondent filed his answer on May 29, 2007. He contends that petitioner's claims are barred by petitioner's procedural default in the state courts, and are without merit.

12. Petitioner filed a reply to respondent's answer on June 28, 2007.

B. *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized by

the Michigan Court of Appeals on petitioner's direct appeal:

During the early morning hours of September 18, 1995, defendant and his brother, Mark Plummer, were at the New Image Lounge in Niles. Defendant was wearing a black leather jacket. The decedent, Damon Hatcher, was also at the New Image Lounge along with several of his relatives, including Kevin Day.

Around 1:30 a.m., Day and Plummer began arguing in the pool room. Defendant and the decedent were also in the pool room at that time. A witness, Israel Bennett, testified that Day and Plummer exchanged words and that Day struck Plummer in the jaw with his fist, causing Plummer to fall to the floor. Plummer stood up, attempted to retaliate, and was again struck by Day. When Plummer went down, defendant tried to step in to help but Bennett stopped him, indicating that the fight was between Day and Plummer. Bennett then observed defendant hesitate for a moment, pull out his pistol and hold it at his side, give Bennett a threatening look, and subsequently turn to focus on his brother, who was lying on the floor with Day standing over him. Just then, the decedent ran from the other side of the bar toward Day, yelling, "Man break that up." The decedent approached with his hand extended to push Day back, but tripped and fell against the wall. As the decedent attempted to stand, defendant "panicked," raised his pistol and shot at the decedent's back, striking him in the left shoulder. Defendant then pulled Plummer from the floor and ran out the door with his pistol still in hand.

Marcus Hatcher, the decedent's cousin, testified that he observed the decedent run toward Day and Plummer and saw him trip and fall. Hatcher stated that after this occurred, defendant moved his hand so that the gun was aimed in a downward direction and fired, striking the decedent. Defendant fired a second shot, then grabbed Plummer and ran, "looking real paranoid like." As he left the bar, defendant fired a third shot "[l]ike he was shooting at somebody."

Christine Jolliff testified that she was in the New Image Lounge at the time of the incident. Jolliff observed defendant holding a gun and subsequently heard gunfire. As she tried to flee, Jolliff looked down, saw blood coming from her leg, and realized that she had been shot.

Day testified that Plummer was drunk at the time of their altercation. Plummer confronted him, apparently about a woman, and the two "commenced to arguing." Day explained that he hit Plummer only after Plummer began to raise his hand against Day. After Day struck Plummer, Day heard someone say, "He has a gun." Day turned, saw the gun in defendant's hand, and ran. Day heard two shots and was near Jolliff when he saw that she had been struck in the leg.

Clint Woods testified that he saw two black men arguing with Day at the New Image Lounge. He then witnessed one of them, who was wearing a black leather jacket, use a black gun to shoot the decedent and a female patron.

Kevin Scaife stated that he witnessed a man in a black leather jacket chase Day out of the pool room as he shot at him. Scaife believed that the man was aiming at Day when he shot a woman in the leg.

Michigan State Police Trooper John Moore testified that he was called to the

New Image Lounge at approximately 1:30 a.m. or 2:00 a.m. for crowd control purposes. Shortly after his arrival, he observed a sudden surge of people running from the bar, some yelling that there had been a shooting inside. Moore stated that one of the female patrons fleeing from the building identified a man in a black leather jacket as the shooter. Moore then ordered the man, whom he identified as defendant, to the ground. Defendant briefly lowered himself but then rose again and took several additional steps. However, defendant complied when Moore again ordered him to stop, and Moore and Officer Jimmy Kidwell of the Niles Police Department then took defendant into custody.

Kidwell testified that, when he and Moore were attempting to apprehend defendant and his brother, he observed defendant stoop and throw something underneath a parked car. After defendant was taken into custody, Kidwell went back to the location where he had seen defendant bend down and retrieved a .25 caliber gun from underneath the car. Defendant told Kidwell that the gun did not belong to him.

Officer Fulton Moore of the Niles Police Department reported that, when he booked defendant, he discovered a gun holster hooked over defendant's belt and situated between his pants and his shorts. Defendant told Officer Moore that outside the bar, he had tripped and the gun had fallen out of the holster. Detective James Merriman, also of the Niles Police Department, reported that a preliminary breath test indicated that defendant's blood alcohol level was 0.10 percent.

Pathologist John Landgraf testified that he had performed an autopsy on the decedent. The decedent had sustained a gunshot wound to his upper back. The bullet pierced the decedent's aorta, and he bled to death.

Stuart Burritt, a firearms expert, testified that in his opinion the gun was less than fifteen inches from the decedent's body when the fatal shot was fired. Burritt also reported that he examined two .25 caliber shell casings retrieved from the scene, along with the bullet found on the floor of the bar and the one retrieved from the decedent's body. Burritt could not say with certainty whether the shell casings had been fired from the .25 caliber pistol found by Kidwell. However, Burritt believed that the two bullets had been discharged from the same weapon and that they could have been fired by the .25 caliber pistol. In addition, Burritt noted that there were "gross similarities" between the markings observed on the spent shell casings found at the scene and those observed on the casings subsequently fired from the pistol.

*Plummer*, 229 Mich. App. at 295-99, 581 N.W.2d at 755-56.

C.    *Procedural Default*

Respondent contends that petitioner's claims are barred by petitioner's procedural default in the state courts because petitioner failed to raise these claims on direct appeal.  However, even were the Court to conclude that petitioner's claims are procedurally default, it is still necessary to

consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or
(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Claims Relating to Newly Discovered Evidence*

The bulk of petitioner's habeas claims relate to newly discovered evidence which he contends establishes that he is innocent of the crimes. Specifically, petitioner contends that after his trial two prosecution witnesses, Steven Bennett and another unidentified witness, were indicted for various drug offenses, calling into question their testimony at trial. Second, petitioner contends that new evidence shows that Kevin Day, and not he, shot the victim. In support of this claim, petitioner presents the affidavit of his father who avers, *inter alia*:

- "I was told by Melody Hutchinson on June 18, 1996 at approximately 11:30 a.m. that she was present at the bar on the night of the shooting and stated that she saw Kevin Day shoot the deceased, Damon Hatcher."  Pet., Ex. D, Aff. of Robert Gerard Plummer, Sr., ¶ 3.
- "On or about May 14, 2002, I met a co-worker at Memorial Hospital in South Bend, Indiana, Mia Wilson Diggins, who informed me that she was the mother of Damon Hatcher['s two (2) children. . . .  She further related that 'there was a confession from Kevin Day to Geraldine Hatcher (Damon's mother) and to me that he accidently shot Damon Hatcher in the bar."  *Id.*, ¶¶ 6-7.

Based on this new evidence, petitioner contends that he is entitled to habeas relief because: (1) he is actually innocent; (2) the trial court erred in denying his motion for relief from judgment; and (3) his conviction was based on false and perjured testimony of Kevin Day.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Actual Innocence*

Petitioner's claim that he is actually innocent is not cognizable on habeas review.  A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, the existence of new evidence, standing alone, is not a basis for granting the writ.  As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317

(1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus petitioner's claim of innocence, standing alone, provides no basis for habeas relief.

Further, even if such a claim were cognizable on habeas review, petitioner's evidence falls far short of the evidence necessary to establish actual innocence. To establish actual innocence as an exception to a procedural bar, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"); *House v. Bell*, 547 U.S. 518, 537 (2006) (same).

Here, petitioner's new evidence of innocence consists of a purported statement from a

witness that Kevin Day shot the victim, and a purported confession by Kevin Day to the victim's mother. However, these purported statements come solely from the affidavit of petitioner's father, who is far from disinterested. And even if the witnesses did make the statements to petitioner's father that he claims were made, there is no way to test the veracity or perception of these hearsay statements, delivered well after the date of the crime. The affidavit of petitioner's father does not constitute the type of new reliable evidence sufficient to establish petitioner's actual innocence. *See Dowthitt v. Johnson*, 230 F.3d 733, 742 (5th Cir. 2000); *cf. Herrera*, 506 U.S. at 417 ("Petitioner's affidavits are particularly suspect . . . because they constitute hearsay.").

2. *Denial of Post-Conviction Relief*

Petitioner also contends that the trial court erred in his motion for relief from judgment, and that he is entitled to a new trial based on the newly discovered evidence. This claim likewise is not cognizable on habeas review.

Because a federal habeas court may not correct a state court's misapplication of its own law, *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Beck v. Washington*, 369 U.S. 541, 544 (1969), a state trial court's denial of a motion for a new trial based upon newly discovered evidence is not a ground for habeas relief. As one court has explained:

> The criteria for a trial court in granting or denying a new trial are matters of state law. As such an incorrect application would not be grounds for federal habeas corpus relief, unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

*Ward v. Wolff*, 499 F. Supp. 1129, 1131 (D. Nev. 1980) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also*, *Buford v. Perini*, No. 85-3862, 1986 WL 18098, at *3 (6th Cir. Oct. 10, 1986) ("[T]he denial of petitioner's post-trial motion [for new trial based upon newly discovered evidence] is simply a matter of state law which cannot serve as a basis for federal habeas corpus relief.");

*Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982). Nor does the trial court's failure to hold an evidentiary hearing on petitioner's newly discovered evidence claim in connection with his postconviction motion warrant habeas relief. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Accordingly, the trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990).

3.     *Perjured Testimony*

Finally, petitioner contends that the newly discovered evidence establishes that Kevin Day committed perjury at his trial when he testified that petitioner shot the victim. For the reasons explained above in connection with petitioner's actual innocence claim, his father's affidavit falls far short of the factual showing necessary to obtain habeas relief. In any event, even if petitioner's evidence were credible, petitioner is not entitled to habeas relief on this claim.

Even assuming, *arguendo*, that petitioner can establish that Day perjured himself, petitioner is not entitled to habeas relief on this basis because petitioner has not alleged that the prosecutor knew or should have known of the alleged perjury. As the Sixth Circuit has explained, in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The

Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in the perjury. *See, e.g.*, *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id*. at 103-04 & nn. 8-9 (discussing cases).[1] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Ineffective Assistance of Counsel*

Petitioner next contends that his trial counsel rendered constitutionally inadequate assistance at trial for failing to investigate and present a defense based on various aspects of the case. Specifically, petitioner contends that counsel should have explored inconsistencies between the laboratory reports used by the prosecution, and that counsel was ineffective for stating in opening argument that petitioner would testify. The Court should conclude that petitioner is not entitled to

---

[1]At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)). Thus, the trial court's denial of a new trial on petitioner's perjury claim did not violate any clearly established law under § 2254(d)(1). *See Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999).

habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.*  at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.

2.     *Analysis*

*a. Laboratory Reports*

Petitioner contends that counsel was ineffective for failing to explore inconsistencies between the lab reports. Specifically, Kevin Teddy examined the gun for fingerprints and compared those recovered from the gun to the known prints of petitioner and others. In his report, he described the .25 Raven pistol as having "no observed serial number." *See* Pet., Ex. E. S. Michael Burritt, a firearms expert, conducted ballistics tests on the .25 Raven and .380 Taurus recovered from the scene. However, contrary to Teddy's report, Burritt's report identifies the .25 Raven by a serial number. *See* Pet., Ex. F. In his habeas application, petitioner contends that counsel should have challenged the chain of custody to determine whether Teddy and Burritt examined the same gun, or whether they examined two separate .25 Raven handguns. *See* Pet., at 16. In his reply brief, petitioner more definitively stated that "[h]ad trial counsel investigated the official Police reports, he would have discovered the Police investigators inspected two different '.25 caliber Raven' handguns," and that "[t]he reports establish that the .25 caliber Raven handgun that Burritt examined was <u>not</u> the same .25 caliber Raven handgun that Teddy examined." Reply, at 2, 3.

Petitioner's argument fails, however, because the discrepancy in the reports establishes no such thing, and his assertion that Teddy and Burritt examined two different .25 caliber Raven handguns is nothing more than speculation. There is no evidence that a second .25 Raven was recovered from the crime scene, nor is there any evidence that the chain of custody was not properly observed. On the contrary, Burritt's report indicates that he received the envelop containing the .25 Raven directly from Teddy, and there is no evidence that Teddy had switched the guns or otherwise did not give to Burritt the gun recovered from the scene and which he had examined for fingerprints.

The only suggestion of a problem in the chain of custody is the discrepancy between Teddy and Burritt regarding the existence of a serial number. However, it is not surprising that Teddy did not observe a serial number on the gun. Such numbers are generally small and not readily apparent, and Teddy was a fingerprint, not firearms, expert. Thus, he had no cause to extensively search for a serial number whereas Burritt, a firearms expert, did. As observed by another court in similar circumstances, "[g]iven this . . . it is unsurprising that [Teddy,] who prepared the first reports failed to notice the serial number, while a specialist at the firearms lab, apparently knowing where to look, discovered the number and recorded it in his report. Beyond pointing to the paperwork discrepancy, moreover, [petitioner] identifies no evidence suggesting that the gun introduced at trial was not the gun taken from him at the scene. We thus see no 'reasonable probability' of a different outcome had trial counsel brought the inconsistent paperwork to the jury's attention." *United States v. Gwyn*, 481 F.3d 849, 855 (D.C. Cir. 2007). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

#### b. Promise that Petitioner Would Testify

Petitioner also contends that counsel was ineffective for promising the jury that he would testify at trial when he did not, in fact, testify. During voir dire, counsel stated that petitioner "is going to testify, and you will hear other witnesses testify in this regard, that on the date in question he believes he was acting in lawful self-defense of both himself and his brother that was with him in the bar." Trial Tr., Vol. I, at 45. Near the conclusion of the prosecutor's case-in-chief, counsel indicated that petitioner no longer wished to testify. Specifically, counsel informed the court: "[I]n my conversations with the Defendant, to this point he's indicated to me that he was prepared to testify. At – just at the lunch break he's informed me that he doesn't wish to testify." *Id.*, Vol. III,

at 532.  Counsel indicated that he disagreed with this decision and had advised petitioner to testify.  *See id*.  The court then engaged in an extensive inquiry with petitioner regarding his understanding of his right to testify and his decision to forgo that right.  *See id*. at 533-45.  After the prosecutor rested, defense counsel gave an opening statement, in which he did not mention petitioner testifying.  *See id*. at 563-65.  Petitioner contends that counsel was ineffective for promising the jury that he would testify.

The Michigan Court of Appeals rejected petitioner's claim, explaining that "[b]ecause defendant unexpectedly changed his mind about testifying, we conclude that defendant has not sustained his burden of showing that the performance of his counsel during *voir dire* was below an objective standard of reasonableness under prevailing professional norms."  *Plummer*, 229 Mich. App. at 309, 581 N.W.2d at 760.  This determination was reasonable.  It is true that counsel's failure to fulfill an earlier promise to call a certain witness, and in particular the defendant, may often constitute ineffective assistance of counsel because it leaves the jury with the impression that the uncalled witness may have provided damaging testimony.  *See United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003).  This is so, however, only "when the failure to present the promised testimony cannot be chalked up to unforseeable events."  *Id*.; *cf. Harrison v. Motley*, 478 F.3d 750, 759 (6th Cir. 2007).  Here, counsel's failure to fulfill the *voir dire* promise was the result of such an unforseeable event.  The trial transcript establishes that both counsel and petitioner fully expected petitioner to testify, and that petitioner himself changed his mind, against the advice of counsel, and decided not to testify.  Thus, counsel's failure to fulfill the promise to present petitioner's testimony occurred through no fault of counsel, but because of petitioner's own unexpected change of heart.  In these circumstances, counsel was not ineffective for failing to fulfill

his promise of presenting petitioner's testimony. *See Ruine v. Walsh*, No. 00 Civ. 3798, 2005 WL 1705147, at *21-*22 (S.D.N.Y. July 20, 2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Inconsistent Defenses

In connection with his unfulfilled promise claim, petitioner also argues that counsel was ineffective for presenting inconsistent defenses–to wit, that petitioner did not shoot the victim at all, and that if he did so it was done in self-defense. The Michigan Court of Appeals rejected this claim, reasoning that the presentation of these inconsistent defenses was the result of petitioner's decision not to testify: "With defendant's belated decision to forgo testifying, counsel's original plan to present a self-defense theory was obviously weakened. Under the circumstances, counsel made the strategic decision to attempt to argue that the prosecution had not proved its case." *Plummer*, 229 Mich. App. at 309, 581 N.W.2d at 761. The Court should conclude that this determination was reasonable.

Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decision left to the judgment of trial counsel." *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000). This includes decisions regarding whether to present inconsistent defenses. *See Brown v. Dixon*, 891 F.2d 490, 495 (4th Cir. 1989). Here, petitioner's counsel reasonably chose to focus primarily on a reasonable doubt defense once petitioner chose not to testify, as petitioner was informed by counsel and the trial court when he indicated his intention not to testify. *See* Trial Tr., Vol. III, at 540-42. At that point, the self-defense case was significantly weakened, because it lacked any testimony from petitioner describing his reasonable fear for his or his brother's life. Further, the reasonable doubt defense was plausible, in light of the scientific

testing which found no gunshot residue on petitioner and was unable to match the bullets to petitioner's gun, and the discrepancies in the testimony of the eyewitness. Nevertheless, it was also reasonable for counsel to shore up petitioner's chance of acquittal by arguing that, even if the jury accepted all of the prosecution's evidence and concluded that petitioner fired the shots, it was done in self-defense. While contradictory to petitioner's principal reasonable doubt defense, there was evidence to support this defense and counsel did not make it a focal point of his argument. Given the broad discretion granted counsel to make this type of tactical decision, the Michigan Court of Appeals's determination was not unreasonable.

Petitioner's reliance on *Bland v. California Dep't of Corrections*, 20 F.3d 1469 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc), is misplaced. As explained by another court in similar circumstances:

> In *Bland*, the court found that the defendant received ineffective assistance because defense counsel presented a theory during the prosecution's case-in-chief that the defendant had denied repeatedly. The defendant had denied, both in tape-recorded conversations with the codefendant and in his sworn statement to the police, that the codefendant was the shooter. And when the defendant testified, he again denied that the codefendant was the shooter. While cross-examining the prosecution witnesses, however, defense counsel suggested that the codefendant was in fact the shooter. Defense counsel here in no way contradicted the testimony of petitioner or presented a theory that petitioner had denied. [H]e simply decided that it was in petitioner's best interest to pursue inconsistent defense theories.

*Havey v. Hubbard*, No. C97-2330, 2001 WL 793281, at *8 (N.D. Cal. July 9, 2001). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Appellate Counsel

Petitioner also claims that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-

86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in this Report, all of petitioner's claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Petitioner's Motion for Evidentiary Hearing and Discovery*

In addition to his habeas application, petitioner has filed a motion for an evidentiary hearing, discovery, and expansion of the record. This motion seeks an evidentiary hearing or expansion of the record to develop facts related to claims which are not fairly encompassed by his habeas application. For the reasons that follow, the Court should conclude that petitioner is not entitled to an evidentiary hearing with respect to these claims. Further, to the extent petitioner is attempting to assert these claims as bases for habeas relief, the Court should conclude that the claim are without merit.

1.      *Standards for Granting an Evidentiary Hearing and Discovery*

"A habeas petitioner, unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, a petitioner is entitled to discovery only if the district judge "in the exercise of his discretion and for good cause shown grants leave" to conduct discovery. Rule 6, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. In order to establish "good cause" for discovery, petitioner must establish that the requested discovery will develop facts which will enable him to demonstrate that he is entitled to habeas relief. *See Bracy*, 520 U.S. at 908-09. The burden is on the petitioner to establish the materiality of the requested discovery. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citations and footnote omitted).[2]

2. *Analysis*

---

[2] Under § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id.* at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. Here, it is doubtful whether petitioner would be entitled to an evidentiary hearing under § 2254(e)(2) even if one were otherwise necessary under Rule 8. However, because one is not necessary, the Court need not resolve this issue.

### a. Ineffective Assistance of Counsel

To the extent that petitioner seeks an evidentiary hearing on his ineffective assistance of counsel claims, such a hearing is not necessary. As explained above, counsel's failure to fulfill his promise that petitioner would testify and his presentation of inconsistent defenses was necessitated by petitioner's own mid-trial decision not to testify. The trial record contains an extensive colloquy regarding this decision, and is more than sufficient to resolve these claims. Thus, an evidentiary hearing would not have the potential to advance these claims. With respect to petitioner's claim that counsel was ineffective for failing to explore the inconsistencies in the lab reports regarding the .25 caliber Raven, as explained above there is simply no basis to conclude that the police recovered two such guns, and the single fact that the fingerprint expert did not observe a serial number does not alone provide any evidence that the police did so. Petitioner's argument that two identical guns were recovered is unsupported speculation. Speculative allegations or allegations which are contradicted by the record are insufficient to entitle a petitioner to an evidentiary hearing, *see Getsy v. Mitchell*, 495 F.3d 295, 312 (6th Cir. 2007); *Young v. Herring*, 938 F.2d 543, 560 & n.12 (5th Cir. 1991). Petitioner's "'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Thus petitioner is not entitled to an evidentiary hearing on this claim.

### b. Suppression of Evidence

First, petitioner seeks an evidentiary hearing regarding the prosecution's suppression of exculpatory evidence. Specifically, petitioner contends that the prosecutor suppressed the police statements of witnesses, as well as evidence recovered at the scene, including a pool cue, screw

driver, and photographs from a trash can. Petitioner also contends that the police suppressed evidence by failing to interview two witnesses. This claim is without merit, and petitioner is not entitled to an evidentiary hearing.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show that the prosecutor (1) withheld evidence that was both (2) favorable to the accused and (3) material to guilt or punishment. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Thus, petitioner's claim raises three questions: (1) was the evidence suppressed by the prosecution in that it was not known to petitioner and not available from another source?; (2) was the suppressed evidence favorable or exculpatory?; and (3) was the evidence material to the question of petitioner's guilt? *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See*

*Carter*, 218 F.3d at 601.

Here, there is nothing to suggest that the prosecution suppressed any police statements given by witnesses. Petitioner contends only that it is obvious that counsel did not have these reports in his possession because counsel did not cross-examine the witnesses with the inconsistent statements in these reports. The fact that counsel did not use the reports, however, does not in any way show that he did not have them in his possession. Further, there is nothing to suggest that the photographs, pool cue, and screwdriver were material or exculpatory. Petitioner does not even allege that the photographs recovered from a trash can at the scene show any of the events leading to the shooting. Nor is there anything in the record to suggest that the pool cue or screwdriver were exculpatory. Petitioner does not allege that they were used by any of the participants in the altercation leading to the shooting, and not a single witness so testified. Nor can petitioner show that he is entitled to relief based on the alleged failure of the police to interview potential witnesses. Although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

Nor is petitioner entitled to an evidentiary hearing on these claims. As noted above, speculative and conclusory allegations are insufficient to warrant an evidentiary hearing. The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996); *see also*, *Washington v. Renico*,

455 F.3d 722, 733 (6th Cir. 2006).  In his motion for an evidentiary hearing, petitioner alleged a grand conspiracy to convict him, involving "perjured police reports, police falsified testimony, police and prosecution obstruction of justice, use of false witnesses and falsified evidence, planting evidence falsely," and prosecutorial suppression of evidence.  Mot. for Evid. Hr'g, at 5.  "Because [petitioner] fails to show that his allegations of a grand conspiracy to convict unjustly are other than frivolous or incredible, . . . he has not established his right to a federal evidentiary hearing." *Young v. Herring*, 938 F.2d 543, 559 (5th Cir. 1991).  Likewise, petitioner "is not entitled to discovery based on these far-fetched aspersions [where] he has proffered no factual allegations to support this tampering proposition." *Alley v. Maine*, No. 01-120-P-C, 2001 WL 420279, at *5 n.15 (D. Me. 2001).  Accordingly, the Court should conclude that petitioner is not entitled to discovery, an evidentiary hearing, or habeas relief on his suppression of evidence claim.

### c.  Denial of Motion for New Trial

Petitioner also contends in his motion for an evidentiary hearing that "the Trial Judge abdicated his discretion to act 'as the Thirteenth Juror' in saying that the decision of fact was for the jury, violated Petitioner's Fourteenth and Sixth Amendment rights on the motion for new trial based on the verdict being contrary to the great weight of the evidence."  Mot., at 2.  Petitioner does not allege what additional facts are necessary to adjudicate this claim, and in any event the claim fails as a matter of law.

Petitioner's claim that the trial court erred in not finding that the verdict was against the weight of the evidence is not cognizable on habeas review.  It is well established that habeas review is not available to correct errors of state law.  *See Estelle*, 502 U.S. at 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985). Thus, petitioner is not entitled to an evidentiary hearing or habeas relief on this claim.

### d. Suggestive Line-up

Petitioner also seeks discovery and an evidentiary hearing to establish that the witness's in-court identifications were tainted by an invalid line-up procedure. A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pr-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972).

Petitioner's claim fails, however, because there is nothing in the record to suggest that the

police conducted any type of pre-trial identification procedure. No witness testified to identifying petitioner in either a photographic or in-person line-up, nor did any police officer testify to such a line-up. And in his supplemental brief in the Michigan Court of Appeals, petitioner himself stated that "[t]here were no line-ups of any kind. Photos or a pre-trial indentification." Mot. for Evid. Hr'g, Ex. 7, at 17. This being the case, there was no basis to suppress any in-court identification by the witnesses at trial. "Generally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994); *see also*, *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). Counsel was able to, and did, explore the reliability of the witnesses' identification testimony extensively at trial. Further, there was no question that petitioner was at the bar and involved in the altercation; thus, there was no question with respect to petitioner's identity. While there may have been a question with respect to the identity of the shooter, this was an issue going to the perception of the witnesses regarding the circumstances of the altercation, not who was involved in the altercation. In these circumstances, any weaknesses in the witnesses' in-court identifications were matters of credibility, not admissibility. Thus, petitioner is not entitled to an evidentiary hearing or habeas relief on this claim.

### *e. Due Process on Appeal*

Petitioner also contends in his motion that he was denied due process on appeal by the court of appeals's remanding of the case for entry of a verdict of guilty of second degree murder. Petitioner argues that the court of appeals's reasons for finding insufficient evidence of premeditation or deliberation equally suggest that the evidence was insufficient to show that

petitioner killed with malice aforethought as required to sustain a second degree murder conviction. This claim, which essentially challenges the sufficiency of the evidence of second degree murder, is without merit.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). Under § 2254(d)(1), a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how

a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980).

Here, the evidence viewed in the light most favorable to the prosecution establishes that petitioner pointed a gun at another person and fired, while in a crowded bar. This evidence is sufficient to establish that petitioner acted with malice aforethought when he shot the victim. As the Michigan Court of Appeals has explained, under Michigan law malice may be inferred from "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001). Pointing a gun at another person and firing it is such an act, and thus the evidence was sufficient to establish that petitioner acted with malice aforethought.

This conclusion does not contradict the court of appeals's conclusion with respect to the lack of premeditation and deliberation. The court found no premeditation because the evidence showed

that the altercation and shooting happened quickly, and that "[t]his heated situation was not conducive to a 'second-look' weighing of the choice of shooting and killing the decedent." *Plummer*, 229 Mich. App. at 303, 581 N.W.2d at 758. The court further explained that "in the confusion during the brawl, there does not appear to have been a sufficient amount of time for defendant to take a second look at the nature of his actions, 'undisturbed by hot blood.'" *Id*. at 305, 581 N.W.2d at 759. This reasoning, however, does not contradict the conclusion that petitioner acted with malice aforethought. As the court of appeals explained, the distinguishing feature of first-degree premeditated murder is that the premeditation element "requires . . . substantially more reflection on and comprehension of the act than the mere amount of thought necessary to form the intent to kill." *Id*. at 301, 581 N.W.2d at 757. Thus, even if the "confusion during the brawl" was such that petitioner did not have the time to take a second look weighing his decision, that confusion did not render it impossible for petitioner to form an intent to kill, commit great bodily harm, or a very high risk of death or great bodily harm.[3] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### f. Sentencing

Finally, in his motion for discovery and an evidentiary hearing petitioner claims that the trial judge exceeded the guidelines in sentencing him based on facts not found by the jury. This claim

---

[3]Confusion may arise due to the use of the term "malice aforethought" in describing the mental state required for second degree murder, as "aforethought" seems to imply some level of premeditation. As the common law has developed, however, the term "aforethought" has become meaningless. *See* 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 139, at 246 (15th ed. 1994) ("[S]ince malice need exist only at the time the homicidal act is committed, the term 'aforethought' has come to be superfluous."); ROY MORELAND, THE LAW OF HOMICIDE, at 70 (1952) ("[T]he word 'aforethought' is a word without any practical significance in common law murder."). Thus, "[a]s a matter of law a killing may be with malice aforethought although it is conceived and executed 'on the spur of the moment.'" ROLLIN M. PERKINS, CRIMINAL LAW § 1, at 35 (2d ed. 1969).

is without merit.

Petitioner's claim is based on the Supreme Court's *Apprendi* line of cases. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at

233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id.* at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely*. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at

286 n.14.

Blakely is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. The Court should also conclude that an evidentiary hearing or discovery is not necessary to resolve petitioner's claims. Accordingly, the Court should deny petitioner's motion for an evidentiary hearing and discovery, and should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/23/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 23, 2008.

s/Eddrey Butts
Case Manager